LAND, Justice.
 

 On or about December 16, 1931, Mrs. George Shushan, plaintiff, purchased from the Union Title Guarantee Company, Inc., a Louisiana corporation, then domiciled and doing business in the city of New Orleans, five mortgage notes for the sum of $3,750 cash, .all dated December 1, 1931, and payable five years after date. These notes hear 6 per cent, per annum interest from date until maturity, payable semiannually, and 8 per cent, per annum interest from maturity until paid. Each note is payable to bearer. The notes are numbered 1, to 5. Notes Nos. 1, 2, and 3 are in the sum of $1,000 each, note No. 4 is in the sum of $500, and note No. 5 is in the sum of $250. All of the notes are made to mature on December 1, 1936.
 

 Plaintiff has sued defendants in solido on three of these mortgage notes: Note No. 2 for $1,000, note No. 3 for $1,000, and note No. 5 for $250, or a total of $2,250, with interest at 6 per cent, per annum from December 1, 1934, to June 1, 1935, until paid, together with interest at 8 per cent, per annum from June 1, 1935, until paid, and for attorney’s fees, and prays for foreclosure of mortgage given as security for the payment of these notes.
 

 This suit was filed June 13, 1935. In their joint answer, defendants aver that the notes sued on are not due until December 1, 1936, and that no interest was due at the time of the institution of the suit, inasmuch as any and all payments on account of principal were made in accordance with the terms of the mortgage, and all interest was paid up to and including interest due as of December 30, 1934, and inasmuch as defendants have tendered the sum of $54.23, which they believe to be the amount due as of June 30, 1935.
 

 Defendants allege that the entire amount in dispute is as to the payments of $600 .which were duly made by them to the Union Title Guarantee Company, Inc., in accordance with the schedules set forth in their answer.
 

 Defendants pray in reconvention for a full and complete accounting of any and all indebtedness which may be due by them, in accordance with the schedules set up in their answer and, after the correctness of the accounting has been determined, that defendants be permitted to pay the correct amount of interest computed on all payments ; and that plaintiff’s suit be dismissed and the mortgage be allowed to continue in force and effect in accordance with its terms and conditions.
 

 Defendants allege that the balance of indebtedness which is due plaintiff is the
 
 *1015
 
 sum of $1,807.93, with interest on that sum up to June 30, 1935, of $54.23; the tender by defendants of this amount to plaintiff having been rejected.
 

 Judgment was rendered by the court below in favor of plaintiff in the full amount of $2,250 sued for, with interest at 6 per cent, per annum from December 1, 1934, to June 1, 1935, together with interest at 8 per cent, per annum thereon from June 1, 1935, until paid, with the additional amount of 10 per cent, on the principal and interest as attorney’s fees.
 

 The judgment also decrees the foreclosure of the mortgage, and provides for a deficiency judgment, if sufficient funds are not realized from the sale of the property to pay demands of plaintiff.
 

 From this judgment defendants have taken a suspensive appeal to this court.
 

 1. All of the notes sued upon by plaintiff are drawn up as follows, except as to amount:
 

 “Union Title Guarantee Company* Inc.
 

 “New Orleans
 

 “$1,000.00 First Mortgage Note Due December 1, 1936
 

 “New Orleans, Louisiana, December 1, 1931
 

 “For value received, I, we, or all of us in solido promise to pay to the order of bearer Five Years after date the sum of $1,000.00 Dollars, with interest thereon at the rate of six per cent, per annum from date until maturity, payable semiannually, and with interest at the rate of eight per cent per annum from maturity until paid. -
 

 “Principal and interest of this note
 
 are payable solely
 
 at the office of Unión Title Guarantee Company, Inc., New Orleans, La.
 

 “This note is secured
 
 by a First Mortgage
 
 on real estate duly recorded on the records of Orleans Parish, Louisiana, to which records,
 
 and the notarial act identified herewith,
 
 reference is hereby made for a complete statement of the nature and extent of the security
 
 and the terms upon which this note is issued and held.
 

 “No. 2 [Signed] Mrs. H. L. Trepagnier
 

 “H. L. Trepagnier”
 

 (Italics ours)
 

 Reference is made in the note to the records
 
 and the notarial act identified with the note,
 
 not merely for a complete statement of the nature and extent of the security, hut also as to
 
 “the terms”
 
 upon which the note
 
 “is issued and held,”
 
 i. e., so that
 
 the holder
 
 might know and comply with the terms stated in the recorded notarial act. In other words, the terms in the recorded act of mortgage, identified with the note, have been read into the note itself, and are binding upon
 
 the holder,
 
 as well as upon the maker. The notes sued upon are clearly nonnegotiable, and are subject to the same defenses in the hands of the bona 'fide purchaser for value (plaintiff) as are available - against her transferor (the Union Title Guarantee Company).
 

 It is provided in the act of mortgage as to “the terms upon which the note
 
 is issued and held”
 
 that: “The principal and intereát of the above notes, shall be payable solely at the office of said Union Title Guarantee Company, Inc., in the City of New Orleans, Louisiana. The deposit by the mortgagor with said Company in cash of the amount
 
 *1017
 
 necessary to pay the principal and interest (and such other amounts, if any, as may he due to the holder or holders of said mortgage notes in accordance herewith) shall constitute full payment as between the mortgagor and the holder or holders of said notes. The holder or holders of said notes shall not be entitled to receive interest on the moneys deposited with said Company. Upon such deposit being made, the holder or holders of said notes shall be excluded from the -lien of this mortgage and shall look for payment of principal and interest and any other amounts that may be due only to the funds so deposited with said Company and in no event to the mortgagor; but said moneys so deposited with said Company shall be paid by said Company to the holder or holders of said notes, respectively, upon presentation of said notes, either for cancellation or for notation of partial payment thereon as the case may be. And, upon the demand of the mortgagor, said Company shall be and it is hereby authorized to execute a partial release of the mortgage to the extent of the payment so made by said morgagor to said Company as herein authorized.”
 

 In commenting upon the same provisions in a similar act of mortgage in Tropical Printing Company, Inc., v. Union Title Guarantee Co., Inc., 180 La. 702, at pages 721 and 722, 157 So. 534, 540, Chief Justice O’Niell said: “It is contended by the receivers that the stipulations which we have quoted from the promissory notes and the acts of mortgage did not oblige the Union Title Guarantee Company to keep a separate bank account or deposit of the funds deposited by note makers, with the corporation, as agent for the note holders. But our opinion is that the stipulations which we have quoted did impose that obligation upon the Union Title Guarantee Company. In the first place,
 
 the stipulation in the notes themselves,
 
 as well as in the acts of mortgage,
 
 that the principal and the interest were both payable solely at the office of the Union Title Guarantee Company, was the same as to stipulate that there should be no payment or tender of payment to the holders of the notes,
 
 and was therefore an unusual stipulation. It is not unusual to stipulate in a promissory note that it is payable at a specified bank or office, leaving it optional with the holder of the note to present it for payment either at the place stipulated or to the maker in person. But
 
 a stipulation in a note that it is payable ‘solely’ at the office of a designated third party is very unusual and
 
 significant. The additional stipulations in these acts of mortgage leave no doubt that the money deposited by note makers with the corporation, as agent for the note holders, should have been kept separate and apart from the company’s funds, and identified as belonging to the note holders, viz.: (1) That a deposit of the amount due on a mortgage note, by the mortgagor, with the corporation, should discharge the mortgagor from liability; (2) that the holder of a mortgage note should not be entitled to interest on the money so deposited, after the making of the deposit; (3) that the deposit should have the effect of releasing the mortgage or lien; (4) that the holder of the mortgage note should look
 
 only to the funds so deposited with the company,
 
 ‘and in no event to the njortgagor’; and (5) that the company had
 
 *1019
 
 authority to release the mortgage to the extent of a payment so made. As the cor
 
 poration
 
 — and
 
 no one else•
 
 — could
 
 receive a payment
 
 due on the mortgage note,
 
 and could release the mortgage
 
 to the extent of the amount received, the holder of the mortgage note or notes had no security whatever, except the financial responsibility of the Union Title Guarantee Company, if the company was not obliged to keep the note holders’ money separate and apart from its own funds.” (Italics partly ours.)
 

 The payments made by the defendants to the Union Title Guarantee Company were made to the proper person, as
 
 “no one else
 
 — could
 
 receive a payment
 
 due on the mortgage note,
 
 and could release the mortgage
 
 to the extent of the amount received.” Defendants are therefore entitled to credits on the notes sued upon for these payments.
 

 It would be almost impossible to conceive an instrument so unusual in its stipulations and so diametrically opposed to the provisions of the Negotiable Instrument Law of the State (Act No. 64 of 1904) as is the act of mortgage in this case. The notes sued upon being subject to the terms of the act of mortgage, another contract, are clearly not negotiable. This is “Hornbook Law,” and too well settled for discussion.
 

 2. In article 9 of their joint answer, defendants quote and rely upon these provisions in the act of mortgage for credits
 
 for partial payments
 
 made to the Union Title Guarantee Company, Inc., on the notes purchased by plaintiff from that company. It is specifically stated in these provisions that: “Upon such deposit being made,
 
 the holder or holders of said notes
 
 shall be excluded from the lien of this mortgage and shall look for the payment of principal and' interest and any other amounts which may be due
 
 only to the funds so deposited
 
 with said Company
 
 and in no event to the mortgagor;
 
 but said moneys so deposited with said Company shall be paid by said Company
 
 to the holder or holders of said notes, respectively, upon the presentation of said notes,
 
 either for cancellation, or for notation of
 
 partial payment thereon
 
 as the case may be.” (Italics ours.)
 

 No previous written notice of the intention of the maker of mortgagor to make
 
 a partial payment
 
 on a note is required in the provisions of the act of mortgage. It is only when the maker or mortgagor exercises “the privilege of
 
 prepaying all or any of said notes”
 
 that previous written notice is required, as shown by the following clause in the act of mortgage: “The Mortgagor shall have the privilege of
 
 prepaying all or any of said notes
 
 on any interest payment date, provided that said mortgagor shall give
 
 written notice
 
 of his intention so to do to said Union Title Guarantee Company, Inc., at least thirty (30) .days prior to such interest payment date, and shall, on such interest payment date,
 
 pay the principal of the note to be
 
 prepaid,
 
 and all accrued interest thereon, and a premium
 
 of one per- cent, of such principal.” (Italics ours.)
 

 In other words, when the maker or mortgagor makes a payment to the company, in accordance with the provisions of the act of mortgage, that ends the matter as far as the responsibility of the maker or mort
 
 *1021
 
 gagor is concerned, and the holder of the note must look “for payment only to the funds so deposited with said Company
 
 and in no event to the mortgagor.”
 
 The company alone must pay the money deposited by the maker or mortgagor to the holder of the note or notes, and no one else is liable.
 

 For these reasons, our conclusion is that defendants are entitled to all partial payments made by them to the Union Title Guarantee Company, Inc., in this case. When these payments were made, it became the duty of plaintiff, the holder, to present these notes to the Union Title Guarantee Company, Inc., “for notation of partial payments,” as expressly provided in the act of mortgage, which is the law between the parties.
 

 The holder is referred, upon the face of the note, to the notarial act of mortgage for
 
 "the terms”
 
 upon which these notes
 
 are
 
 “issued
 
 and held.”
 

 Under the provisions of the act of mortgage, defendants, the makers, were under no obligation whatever, either to make direct payment to' plaintiff, the holder, or to give notice of partial payment to the holder. These obligations rested solely upon the shoulders of the Union Title Guarantee Company, Inc., the receiver and sole disburser of the trust funds received from defendants.
 

 3. This case was tried on an “Agreed Statement of Facts,” found at pages 12 to 15 in the transcript.
 

 These notes are dated, for convenience, December 1, 1931, and are due December 1, 1936, while the act of mortgage is dated December 16, 1931.
 

 In the “Agreed Statement of Facts” it is admitted that the following partial payments were made to the Union Title Guarantee Company, Inc., by defendants :
 

 On June 1, 1932, plaintiff, the holder, presented all of the five notes purchased from the Union Title Guarantee Company, Inc., at its office in the city of New Orleans, and received $103.13, which represented the semiannual interest on these notes from December 16, 1931, to June 1, 1932.
 

 On December 1, 1932, plaintiff, the holder, presented all of the notes at the office of this company and received $112.50, which represented the semiannual interest upon these notes from June 1, 1932, to December 1, 1932.
 

 On January 4, 1933, defendants' made their last payment of $50, and at that time had in the hands of the Union Title Guarantee Company, Inc., a balance of $384.37 to their credit.
 

 On January 6, 1933, the Union Title Guarantee Company, Inc., filed receivership
 
 *1023
 
 proceedings in the civil district court for the parish of Orleans, and receivers were appointed on the same day. Defendants were placed on the receivers’ account as a privileged creditor in the amount of $50, which was the $50 delivered by defendants to the Union Title Guarantee Company, Inc., pn January 4, 1933, the last payment made, but the civil district court decreed that this account should be amended by eliminating defendants. No appeal was taken from this decree and the time for appeal has elapsed.
 

 On June 2, 1933, defendants delivered to plaintiff $112.50, which was the amount necessary to pay semiannual interest for the period commencing December 1, 1932, and ending June 1, 1933, and was so applied by the plaintiff, the holder of the notes.
 

 On December 6, 1933, defendants delivered to plaintiff, holder of the notes, $1,012.50. The sum of $112.50 was applied toward the payment of the semiannual interest from June 1, 1933, to December 1; 1933. By agreement between the plaintiff and defendants, the balance of $900 was applied to the principal of note No. 1 for $1,000, although it was not then due.
 

 The payment of $900 on note No. 1 for $1,000 reduced the balance due on the five notes purchased by plaintiff, aggregating the sum of $3,750, to $2,850. On June 1, 1934,. defendants paid plaintiff the sum of ■ $85.50, the semiannual interest on $2,850 from December 1, 1933, to June 1, 1934.
 

 At the time of the payment, of the above-stated sums, June 2, 1933, December 6, 1933, and June 1, 1934, an agreement was entered into to the effect that these payments should not prejudice either plaintiff’s or the defendants’ rights insofar as the sums delivered by defendant to the Union Title Guarantee Company, Inc., were concerned.
 

 On December 6, 1934, defendants paid plaintiff $685.50, under an agreement in a letter of same date written by plaintiff’s attorneys to defendants, stating that $500 should be applied in full payment of note No. 4 for $500, and $100 applied toward payment of balance of note No. 1, and $85.50 applied toward payment of semiannual interest from June 1, 1934, to December 1, 1934.
 

 An act of partial release of mortgage covering notes Nos. 1 and 4 was executed and duly filed in the mortgage office for the parish of Orleans. These payments were applied to note No. 4 and the balance due on .note No. 1, on December 6, 1934, as shown by letter of plaintiff’s attorneys to defendants. At that date all interest due by defendants had been paid, and plaintiff’s notes Nos. 2, 3, and 5, aggregating $2,250, did not fall due until December 1, 1936.
 

 As already stated, defendants have invoked the provisions contained in the act of mortgage.
 

 At the time of the receivership proceedings of the Union Title Guarantee Company, Inc., there remained in its possession $384.37, consisting of sums delivered to it by defendants. Neither that company nor its receivers have paid that amount, or any part of it, to either plaintiff or defendants.
 

 Defendants have repeatedly protested, and do now protest in this suit, against the payment of the principal and interest of
 
 *1025
 
 the notes, without credit being allowed on the notes for payments made by defendants to - the Union Title Guarantee Company, Inc.
 

 Plaintiff made amicable- demand upon defendants on June 1, 1935, for the sum of $67.50, which was the amount claimed as semiannual interest on $2,250 covering the period from December 1, 1934, to June 1, 1935, and without allowing the credit of $384.37 on the notes. But defendants refused to pay same on the ground that they owed'only $54.23 in interest, after the credit of $384.37 was allowed.
 

 Plaintiff thereupon made demand upon defendants for the sum of $2,250, the full face value of the notes, together with $67.50 interest on the full amount, or 6 per cent, per annum interest from December 1, 1934, to June 1, 1935, together with 10 per cent, attorney’s fees on the principal and interest.
 

 In addition to the $600 paid to the Union Title Guarantee Company in accordance with the provisions of the act of mortgage, defendants paid to Mrs. Shushan, plaintiff, after they were advised that she was the holder of the notes, the following amounts, all of which in so far as interest is concerned were paid under protest:
 

 The above is one of the schedules in defendants’ answer, and the other schedule in the answer is as follows:
 

 The balance of indebtedness due plaintiff, after allowing credits for the $6Q0 paid by defendants to Union Title Guarantee Company, is the sum of $1,807.93 with semiannual interest up to June 1, 1935, of $54.23.
 

 It is stated in-the “Agreed Statement of Facts”: “That amicable demand was made by plaintiff upon defendants
 
 on June 1,1935
 
 for the sum of $67.50, which was the amount plaintiff claimed as the semi-annual interest covering the period from December 1, 1934 to
 
 June 1, 1935,
 
 but defendants refused to pay same on the grounds that they only owed $54.23 in interest, and that defendants
 
 *1027
 

 thereupon
 
 tendered to plaintiff the sum of $54.23 in full payment of said interest, which was refused by plaintiff on the grounds that plaintiff contended that she was entitled to $67.50.” Tr., pp. 14 and 15. (Italics ours.)
 

 As this contention is based upon the full amount of $2,250, the face value of the notes, without any credits being allowed on the notes for the $384.37 claimed by defendants, it is not well founded, since we find the schedule shown above allows proper credits on the notes sued upon.
 

 It is true that it is provided in the act of mortgage, in case of
 
 nonpayment
 
 of any of the mortgage notes
 
 or of any interest thereon when due,
 
 that all said mortgage notes, in principal and interest, shall at the option of the holder or holders of said mortgage notes immediately become due and payable.
 

 But, as legal tender of the semiannual interest of $54.23, due on June 1, 1935, was made to plaintiff on that day by defendants, when demand was made for the payment of interest, and as the amount tendered by defendants was the correct amount then due, plaintiff should have accepted that amount, and is without just or legal grounds to resort to the foreclosure of the mortgage in this case.
 

 For the reasons assigned, it is ordered that the judgment appealed from be annulled and reversed.
 

 It is now ordered that plaintiff’s suit be dismissed at plaintiff’s costs, with reservation to defendants of the right to' pay to plaintiff the sum of $54.23, due plaintiff as semiannual interest on June 1, 1935; said amount having been duly tendered by defendants, when due, and refused by plaintiff.